## J. S. Mayfield Lumber Company v. E. B. Carver.

Decided December 14, 1901.

**1.—Practice—Amendment After Evidence Closed—Continuance.**

Action of the trial court in allowing an amended petition to be filed after the close of the evidence and of the opening argument, and in refusing defendant a continuance thereupon applied for, held not an abuse of judicial discretion.

**2.—Same—Continuance.**

The refusal of a continuance is not reversible error where the absent witness appeared and testified at the trial.

**3.—Same—Assignment of Error.**

An assignment of error to the admission of certain evidence can not be sustained where the testimony set out in the bill of exceptions as objected to is not quoted in the brief, and seems to have been admissible, while that which is quoted in the brief from the statement of facts as objectionable does not seem to have been objected to.

**4.—Contract—Damages for Breach Not Precluded by Judgment for Contract Price.**

Where notes for the balance of the contract price for a building were executed, and at the time it was agreed that all questions of damages for breach of the contract should be left for future adjustment, and the notes were merged into a judgment rendered in an ordinary suit thereon in which only the general issue was pleaded, the owner of the building was not precluded from recovering damages for defects in its construction.

**5.—Practice on Appeal—Conflicting Evidence.**

Case where the evidence is conflicting, and the preponderance rather against the findings of the trial court, but his decisions thereon not disturbed.

Appeal from Clay. Tried below before Hon. A. H. Carrigan.

*Galloway & Templeton,* for appellant.

*Allen & Wantland* and *Matlock, Miller & Dycus,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—Appellant, a private corporation, undertook to construct for appellee a two-story brick building on lot 3, block 7, in the town of Henrietta; but, as the evidence tended to show, failed to construct the building of as good material in some respects as was called for in the contract, and failed to construct some of the walls thereof, of the thickness and in the manner required by the contract, to appellee's damage, as found by the judge, before whom this case was tried without a jury, $1000. The recovery, however, was fixed by the judgment at $800, in response to the written offer of appellee to remit whatever damage he might be entitled to on account of the walls of the upper story being thirteen instead of eighteen inches thick. The contract for the construction of the building, was made June 30, 1899, and according to the contention of appellee, was parol. The following written specifications, however, were drawn up at the time, and a copy thereof was left with appellee, although he did not sign the instrument:

"Specifications for two-story brick building for E. B. Carver, 28 by 110 feet, height of wall.

"80 feet of south wall to be 13, laid in Portland cement.

"30 feet of south wall to be 18, laid in best lime mortar.

"30 feet of east wall to be 18, laid in best lime mortar.

"10 feet of north wall to be 18, laid in best lime mortar.

"Floor joists to be 2 feet centers 4 tiers bridging $\frac{1}{4}$.

"Clg. joists to be 2 tiers straight 1 at each end.

"To be floored with $1\frac{1}{4}$x4 D-M flg. below, and $\frac{1}{4}$ D-M flg. above.

"Overhead to be ceiled with $\frac{5}{8}$x4 D-M clg.

"Roof to be trussed with 2 croun in centre.

"2-6 rafters covered solid with 1 inch sheeting, graveled 4 ply, same as roof on other building. Roof to have 4 foot fall from front to back end.

"One front and one back door to correspond with, and made as doors in other building.

"Front and back doors to have beveled plate glass.

"Two show windows in front, square edge, plate glass.

"(To be more explicit) : Front and back to correspond with same of other building, including transom windows—11 or 12.

"All painting to be two coat work, walls plastered and white coated.

"Iron lintels and door sills, wood columns, locks and hardware same as other building.

"Dirt and rubbish cleaned away to receive building.

"Foundation built and repaired.

"Excavation to be three feet deep and foundation laid with hard rock.

"All material and work to be of best quality and grade.

"Brick same quality as in other building.

"For 3700.

J. A. GEORGE, Contractor.

"Guarantee above contract:

"THE J. S. MAYFIELD LUMBER COMPANY, Per Caskey."

The "other building" referred to in these specifications was what was known as the Opera House building, belonging to appellee and situated on the lots north of and adjacent to said lot 3. The testimony of appellee tended to show that appellant, in making the contract to erect the building in question, agreed to duplicate the Opera House building; that is, in material and workmanship, and in the height and thickness of the walls. The Opera House building stood upon two lots, the south half of it being a one-story building, on 80 feet of the south wall of which the north wall of the building in question was to have been, and was built. The south and west walls of the second story of the Opera House building were built upon iron columns, and were only 13 inches thick, but all the other walls of that building were 18 inches thick. The thickness of 80 feet of the south wall of the building in question did not exceed 13 inches, and was not cemented to the adjoining wall, and none of the walls of the second story exceeded 13 inches. The opera house was built of Thurber brick, which the evidence tended to show was better material than the Gainesville brick, which was used in the construction of the house in question. The evidence also tended to show that the glass in the windows and the wood in the doors of the latter were inferior to the glass in the windows and the wood in the doors of the former; and that the walls of the building in question had cracked as a possible result of bad material and workmanship, one or both, and that they were thus inferior to those of the opera house. The evidence also tended to show that owing to the defects above specified, the building as constructed was worth about $1000 less than it would have been worth

if it had been constructed so as to duplicate the Opera House building, as appellee claimed it should have been.

In appellee's original petition, upon which the case went to trial, it was alleged to be within the terms of the contract, "that the dimensions of the walls of said building should be substantially the same as the walls of said Opera House building, except that 80 feet of the south wall of said building should be only 13 inches in width and laid in Portland cement, and said 80 feet of wall should be solidly cemented to an adjoining wall on the south of same," and that the second-story walls should be 13 inches in width; but that these walls were only 12¼ instead of 13 inches in width, and also that the 80 feet of south wall had not been cemented to the adjoining wall.

In the amended petition, which was not filed till after the evidence had all been introduced and the opening argument for appellee had been concluded and that of appellant begun, it was alleged to be a part of said contract of June 30, 1899, "that the entire south wall should be 18 inches thick," with 80 feet thereof cemented to the rock wall adjoining it on the south, and that the walls of the upper, as well as lower story, were to be 18 inches thick, except the upper west or front wall, which was to be 13 inches.

On account of these changes in the petition, counsel for appellant objected to the filing of the amended petition at that advanced stage of the trial, and, upon his objection being overruled, applied for a continuance, pleading surprise, etc. The continuance was sought mainly to procure the testimony of Morgan Mayfield, who was general manager of appellant when the contract was made; C. C. Caskey, who represented appellant in making the contract, and J. A. George, who superintended the construction of the building for appellant, all of whom were nonresident witnesses, whose depositions had been taken and read in evidence by appellant. Appellant stated that it expected to disprove by these witnesses the new allegations of the amended petition, and to show that "the defendant never did agree to erect 80 feet of lower south wall of said building of greater thickness than what is "commonly called a 13-inch wall."

The objection to the changes in the amended petition affecting the thickness of the walls of the upper story seems to have been fully met by appellee's withdrawal of that portion of his claim for damages, which resulted in the reduction of his judgment $200. It only remained, therefore, for appellant to prove by these witnesses that the thickness of the 80 feet of lower south wall was not to exceed 13 inches; but on this point at least two of them, Caskey and George, and the two having the best opportunities of knowing, had already testified by deposition to the effect that the written specifications quoted above, of which each party retained a copy, and in which the thickness of this wall was fixed at 13 inches, included all that was to be done by appellant. That is, according to their testimony (and that of Mayfield was to the same effect), the written specifications were the exact terms of the contract. True, there

was some testimony tending to show that after the contract was made, by agreement or understanding of both parties the thickness of the 80 feet of south wall was to be increased 4 inches, but this testimony was introduced by appellant, or at least dropped out while one of his witnesses was testifying, and this new agreement, if any was made, was not declared on.

We are of opinion, therefore, that in allowing the amendment to be filed after the evidence was all in and the argument had begun, and in refusing to continue the case, the discretion of the trial judge was not so clearly abused to the detriment of appellant as to warrant this court in reversing the judgment. Telegraph Co. v. Bowen, 84 Texas, 476; Bank v. Sharpe, 12 Texas Civ. App., 223; Tomson v. Heidenheimer, 16 Texas Civ. App., 114; Foard v. Liner, 20 Texas Civ. App., 353; Live Stock Co. v. Thompson, 51 S. W. Rep., 890.

Clearly the alleged surprise at the testimony of appellee on the issue of settlement pleaded by appellant did not warrant a continuance especially in view of his replication to that defense, and the testimony of appellant's witnesses on that issue. The application to continue for the purpose of showing that the building contract was that of George and not appellant's was also wanting in merit, as no diligence was shown. Nor was there error in refusing to continue the case in the first instance on the application then made, since the absent witnesses appeared and testified before the trial was concluded.

It follows from these conclusions that the first, second, third, fourth, fifth, sixth, ninth, tenth, nineteenth, and twentieth assignments of error must be overruled.

The seventh and eighth assignments can not be sustained, because no substantial variance between the allegations of the amended petition and the evidence relied on by appellee to sustain these allegations is pointed out, in or under these assignments, which complain of a variance between the allegations and proof.

Nor can the fifteenth assignment, which complains of the admission of "the testimony of the plaintiff as to value," be sustained; because what was set out in the bill of exceptions (number 2) as objected to is not quoted in the brief and seems to have been admissible, while what is quoted in the brief from the statement of facts as objectionable testimony does not seem to have been objected to.

The eighteenth assignment must be overruled, because, according to appellee's testimony, at the time the notes were executed by him to cover the balance of the contract price for the building, which notes had become merged in a judgment rendered in an ordinary suit thereon in which only the general issue was pleaded, it was understood that the matters involved in this litigation were to be left open for future adjustment.

We have thus disposed of all the assignments except those complaining, in different forms, of the sufficiency of the evidence to support the judgment. The trial court evidently gave great weight to the testimony

of appellee, for in more particulars than one the preponderance of the evidence seems to have been against him. There was, for instance, the written instrument drawn up at the time the contract was made, of which appellee kept and produced on the trial a copy, which in one important particular at least, that is, as to thickness of the 80 feet of south wall, contradicted him, to say nothing of the testimony of appellant's witnesses, who were equally credible, and, unlike appellee, disinterested. The written instrument, however, did not appear to be a complete contract on its face, but only to contain details of a more comprehensive agreement, and was therefore not conclusive. Ayres v. Herring, 32 S. W. Rep., 1061, and authorities there cited. Besides, according to its terms, when read in the light of other testimony, the quality of the brick to be used in the building in question was to be the same as in the Opera House building,—all material and work, in fact, to be of the best quality and grade, if not the same as in that building; and there was ample evidence that as to brick and in other particulars these requirements of the contract had not been met, though there was also evidence tending to show that they had been modified or waived. There was disinterested and credible testimony, corroborated by circumstances, tending strongly to prove that the matters litigated in this suit were fully covered by the settlement made when appellee executed his promissory note for the balance due on the contract. The district judge, however, whose province it was to weigh the testimony, had appellee before him, and observed his manner of testifying through a long and rigid cross-examination, and resolved the conflict of evidence in his favor, interested though he was, and we do not feel warranted in disturbing his finding on this or any other issue of fact.

It follows that the judgment must be affirmed.

*Affirmed.*

Writ of error refused.